IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TOP TOBACCO, L.P., *et al.*,
    Plaintiffs,

v.                                                          Civil Action No. 3:19-cv-275

AZIZ THOBANI, *et al.*,
    Defendants.

## OPINION

Top Tobacco, L.P., Republic Technologies (NA), LLC, and Republic Tobacco, L.P. brought this action against Aziz Thobani and USA Imports VA, Inc., alleging violations of the Lanham Act and Virginia common law.[1] The plaintiffs served the defendants with the complaint and summons on April 17, 2019. The defendants failed to file responsive pleadings, and the plaintiffs moved for entry of default. Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk entered default on June 17, 2019. The plaintiffs now move for default judgment under Rule 55(b). The Court held a hearing on the motion on October 10, 2019.

## I. BACKGROUND

The plaintiffs manufacture and distribute TOP- and JOB-brand cigarette rolling papers, two of the best-known and longest-selling cigarette rolling papers in the United States. The plaintiffs maintain federal trademark registrations for the TOP and JOB marks. The plaintiffs have spent significant time and resources marketing their products, and they have developed considerable and valuable goodwill associated with the marks.

---

[1] Specifically, 15 U.S.C. §§ 1114, 1114(1)(a), 1125(a); common law trademark infringement; and common law unfair competition.

In 2018, the plaintiffs learned that the defendants were selling cigarette rolling papers with TOP- and JOB-brand marks at a discounted price "because they were 'bad.'"[2] (Dk. No. 20-2, ¶ 4.) A laboratory analysis showed that the cigarette rolling papers were counterfeit.

## II. CLAIMS

When a defendant defaults, the defendant admits the well-pleaded factual allegations in the complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Thus, in reviewing a motion for default judgment under Federal Rule of Civil Procedure 55(b), courts accept as true plaintiffs' well-pleaded allegations regarding liability. *Id.* Courts must then determine whether the allegations support the relief sought. *Id.*

### A. Trafficking in Counterfeit Goods

To establish a trademark counterfeiting claim under 15 U.S.C. § 1114(1)(a), the plaintiffs must show that "(1) the defendant[s] intentionally used a counterfeit mark in commerce; (2) the defendant[s] knew that the mark was counterfeit; (3) the use occurred in connection with the sale, offering for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse consumers." *Assoc. Gen. Contractors of Am. v. Stokes*, No. 1:11-cv-795 (GBL/TRJ), 2013 WL 1155512, at *3 (E.D. Va. Mar. 19, 2013). "Infringement is willful if a defendant has knowledge that its conduct represented infringement or recklessly disregarded the possibility." *Mya Saray, LLC v. Al-Amir*, 831 F. Supp. 2d 922, 941 (E.D. Va. 2011).

The plaintiffs' complaint sufficiently alleges the elements of trademark counterfeiting. The plaintiffs' laboratory testing showed that the defendants sold counterfeit TOP- and JOB-brand products, satisfying the first and third elements. Thobani's statement that the counterfeit rolling

---

[2] The plaintiffs included this detail in William L. Frank, Jr's, affidavit in support of their motion for default judgment. (Dk. No. 20-2). The plaintiffs hired Franks to investigate suspected counterfeiters of their cigarette rolling paper.

2

papers "were 'bad'" and his willingness to sell the rolling papers at a discounted price indicate that he knew that he was selling counterfeit papers, satisfying the second element. (Dk. No. 20-2, ¶ 4); *cf. United States v. Zayyad*, 741 F.3d 452, 463 (4th Cir. 2014) (noting that selling drugs below wholesale suggests deliberate indifference that goods were counterfeit). The plaintiffs enjoy "a presumption of a likelihood of confusion when the infringing mark is nearly an exact imitation," so their allegations satisfy the fourth element. *JUUL Labs, Inc. v. Unincorporated Ass'n Identified in Schedule A*, No.18-cv-01063 (LO/IDD), 2019 WL 1511883, at *3 (E.D. Va. Mar. 20, 2019), *report & recommendation adopted*, 2019 WL 1510321 (E.D. Va. Apr. 5, 2019).

### *B. Trademark Infringement*

To prove trademark infringement under 15 U.S.C. § 1114, the plaintiffs must show that (1) they "own[] a valid and protectable mark;" (2) the defendants used a "re-production, counterfeit, copy, or colorable imitation" of that mark in commerce, without the plaintiffs' consent; and (3) the defendants' use "is likely to cause confusion." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259 (4th Cir. 2007). Virginia common law trademark infringement claims require the plaintiffs to prove the same elements as a § 1114 claim. *See Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014).

The plaintiffs own valid trademarks for both TOP- and JOB-brand marks, and the defendants used counterfeit copies of those marks in commerce without the plaintiffs' consent, satisfying the first and second elements. Because the defendants sold cigarette rolling papers with marks nearly identical to the TOP and JOB marks, the plaintiffs receive a presumption of confusion. This satisfies the third element. Accordingly, the plaintiffs have established the elements of trademark infringement under 15 U.S.C. § 1114. Moreover, because the plaintiffs

have established trademark infringement under § 1114, the plaintiffs have also established trademark infringement under Virginia common law. *See Swatch AG*, 739 F.3d at 162.

### *C. Other Claims*

The tests for false designation of origin under 15 U.S.C. § 1125(a) and unfair competition under Virginia common law are "essentially the same as the test for trademark infringement." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995); *see also Entrepreneur Media, Inc. v. JMD Entm't Grp., LLC*, 958 F. Supp. 2d 588, 594 (D. Md. 2013). Accordingly, because the plaintiffs have sufficiently established claims for trademark infringement, they have also established their false designation of origin and common law unfair competition claims.

## III. RELIEF

### *A. Statutory Damages*

The Lanham Act entitles the plaintiffs to up to $200,000 per counterfeit mark, or up to $2 million per counterfeit mark if the defendants acted willfully. 15 U.S.C. § 1117(c)(1)-(2). The plaintiffs have asked for $200,000 in statutory damages, or $100,000 per mark. The plaintiffs request half of the maximum award that they could seek without showing willfulness, and far below the maximum award that they could seek for willful violations of the Lanham Act. Moreover, courts within this district have made comparable statutory damages awards in similar cases. *Cf. GMBH v. Ilnistkiy*, No. 1:17-cv-415, 2018 WL 1882823, at *6 (E.D. Va. Jan. 25, 2018) (noting that courts within this district have "previously tended to award statutory damages for willful counterfeit use in the range of $100,000.00 to $120,000.00," and awarding $32 million for sixteen infringing marks). The Court, therefore, finds an award of $100,000 per mark reasonable and will award the requested $200,000.

## B. Injunction

### i. *Permanent Injunction*

The plaintiffs request a permanent injunction enjoining the defendants from selling, offering for sale, or distributing any product infringing on the plaintiffs' TOP and JOB marks. *See* 15 U.S.C. §1116(a). To receive a permanent injunction, the plaintiffs must show "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff[s] and defendant[s], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Christopher Phelps & Assocs. v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007).

Irreparable injury "regularly follows" trademark infringement, and monetary damages do not adequately compensate the plaintiffs for the harm the infringement causes to the plaintiffs' reputation, so the plaintiffs satisfy the first and second elements. *Lone Star Steakhouse & Saloon, Inc.*, 43 F.3d at 938-39. Ceasing illegal activity does not constitute a hardship for the defendants, satisfying the third element. *See PBM Prod. LLC v. Mead Johnson & Co.*, 639 F.3d 111, 127 (4th Cir. 2011). Furthermore, the injunction would not disserve the public interest, satisfying the fourth element. Accordingly, the Court will grant the requested permanent injunction.

### ii. *Destruction of Goods*

The plaintiffs also ask the Court to enter an order requiring the defendants to destroy any materials they have bearing the infringing marks. When a court finds that a defendant has violated 15 U.S.C. § 1125(a), it "may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant" bearing the infringement mark to "be

delivered up and destroyed." 15 U.S.C. § 1118. The Court has determined that the defendants have violated § 1125(a) and concludes "that the return and destruction of infringing materials is reasonable, will provide a more effective remedy, and [will] significantly reduce the likelihood of any further confusion." *Portfolio Recovery Assocs., Inc. v. Portfolio Recovery Grp., LLC*, No. 2:12CV649, 2013 WL 5723869, at *12 (E.D. Va. Oct. 18, 2013). The Court will therefore order the defendants to destroy all materials with the infringing marks and to report to the Court and the plaintiffs within thirty days of service of this Opinion, in writing and under oath, how they have complied with these injunctions.

### C. Costs and Fees

Under 15 U.S.C. § 1117(a), a plaintiff is "entitled . . . to recover . . . the costs of the action." 15 U.S.C. § 1117(a). Accordingly, the Court will award the plaintiffs their requested costs of $450.

In "exceptional cases," a court may also award reasonable attorney fees to a plaintiff. *Id.* To award fees under this standard, the Fourth Circuit requires courts to find, in light of the totality of the circumstances, that (1) "there is an unusual discrepancy in the merits of the positions taken by the parties . . . based on the non-prevailing party's position as either frivolous or objectively unreasonable;" (2) "the non-prevailing party 'has litigated the case in an unreasonable manner;" and (3) "there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence." *Georgia-Pac. Consumer Prod. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015) (citations and internal quotations omitted).

The plaintiffs ask for $10,717.50 in attorney's fees. They argue that this qualifies as an exceptional case because the defendants did not respond to the lawsuit, which demonstrates a threat of continued infringement. The Fourth Circuit, however, did not include the threat of continued

infringement alone as a reason to conclude that an action meets the "exceptional case" standard. *Id.* Additionally, exceptional cases in which courts have awarded fees involved affirmative misconduct during the litigation process. *See, e.g., Urban Outfitters, Inc. v. BCBG Max Azria Group, Inc.*, 430 Fed. Appx. 131, 133-34 (3d Cir. 2011) (finding the case exceptional because of multiple instances of litigation misconduct); *Choice Hotels Intern. Inc., v. Pennave Associates, Inc.*, 43 Fed. Appx. 517, 519 (3d Cir. 2002) (finding the case exceptional because non-prevailing party disobeyed a court order); *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 282 (3d Cir. 2000) (finding the case exceptional because of non-prevailing party's "vexatious" litigation tactics). Following the Fourth Circuit's framework, the Court finds that the defendants have not taken a position or litigated unreasonably (or at all), and that the plaintiffs have not demonstrated that a fee award will "advance considerations of compensation." *See Georgia-Pac. Consumer Prod. LP*, 781 F.3d at 721. The Court also finds that the award of statutory damages and the injunctions will sufficiently deter the defendants from infringing on the plaintiffs' marks in the future. Accordingly, the Court denies the plaintiffs' request for attorneys' fees.

## V. CONCLUSION

For the foregoing reasons, the Court grants in part the plaintiffs' motion for default judgment. The Court will enter judgment in favor of the plaintiffs in the amount of $200,450, representing $200,000 in statutory damages and $450 in fees, plus post-judgment interest at the statutory rate of 1.66% per annum. The Court will enjoin the defendants from further infringement and will order the defendants to destroy the infringing materials. Within thirty days of this Opinion, the defendants must file a written report, under the penalty of perjury, explaining how they have complied with the injunctions. The defendants must also serve a copy of the report on the plaintiffs.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: <u>10 October 2019</u>
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge